Filed 5/19/22  P. v. Shaw CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. SHALONDA C. SHAW, Defendant and Appellant. | B312145 (Los Angeles County Super. Ct. No.  BA480942-01) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura F. Priver and Karla D. Kerlin, Judges. Affirmed in part and remanded with direction.

Robert F. Somers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Charles Lee, Deputy Attorneys General, for Plaintiff and Respondent.

Shalonda Christine Shaw was convicted of simple mayhem (Pen. Code,[1] § 203) for causing severe burns to Jose Estrada's left leg; the jury found true the allegation that she personally used a deadly or dangerous weapon (gasoline) in the commission of the mayhem (§ 12022, subd. (b)(1)).  The attack occurred while Estrada was sitting outside his tent in a homeless encampment, and may have involved a dispute over narcotics sales.  After initially finding appellant "marginally" suitable for placement through the Office of Diversion and Reentry (ODR), the ODR court continued its hearing to receive additional information from the victim, and found appellant not suitable for placement in an ODR program.  The trial court then sentenced appellant to the mid-term of four years for the mayhem conviction plus a consecutive one-year term for the deadly or dangerous weapon enhancement.

Appellant appeals, contending the trial court abused its discretion in denying ODR placement.  In a supplemental brief, she contends the matter must be remanded for resentencing in light of Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124), which changed the presumptive mid-term sentence to the low-term sentence for certain offenders, effective January 1, 2022.  (Stats. 2021, ch. 695, § 5.3.)  We see no abuse of discretion in the trial court's decision that appellant was not suitable for ODR.  We agree the matter must be remanded for resentencing in light of Assembly Bill 124.  In all other respects, we affirm the judgment of conviction.

---

[1]     Undesignated statutory references are to the Penal Code.

2

## BACKGROUND

On September 5, 2019, Jose Estrada was sitting outside his tent in an encampment along the railroad tracks near the intersection of Slauson and Western Avenue in Los Angeles. He was smoking marijuana with two women. Appellant walked toward and then past them. She appeared angry. She had previously told Estrada to stop selling drugs in the encampment.

Appellant returned five to ten minutes later, carrying a gallon of liquid. She poured some of the liquid on Estrada's lower left leg. Estrada believed she tossed some of the liquid toward his head, and he raised his arms to protect his face. The liquid splashed on his wrist and forearm. Estrada smelled gasoline, then looked down and saw his leg, wrist and fingers were on fire. Estrada ran and threw himself onto a patch of dirt in an attempt to put out the fire. Estrada did not see appellant holding a match or lighter.

Estrada suffered third degree burns on his left leg that required multiple surgeries and a skin graft. At the time of trial, he was unable to extend his left leg fully and was frequently out of breath due to damage to his lungs from smoke inhalation.

A criminalist for the Los Angeles County Sheriff's Department determined that a gallon container and some clothing found at the crime scene contained gasoline. An arson investigator for the Los Angeles County Fire Department testified that a lit cigarette cannot ignite gasoline vapors due to the structure of the cigarette.

During trial, the prosecutor played recordings of two outgoing phone calls made by appellant from jail. In a November 8, 2019 call, appellant admitted pouring gasoline on Estrada, but claimed that she did not light the gasoline on fire. She indicated

Estrada had told her she could not sell drugs in the area and she had been selling drugs there since she was 10 years old. She also stated her belief that Estrada had cut her brother on the face and so she had been looking for him. In a March 5, 2020 call, appellant stated it looked like she was going to "beat the case" because the prosecution could not locate its witnesses. She said the prosecution had "built a case around a crystal head witness they can't find, but they not ever gonna find her because my cousins are not going to let that girl testify against me. So I ain't worried about it."

The jury acquitted appellant of the charged offenses of attempted murder, aggravated mayhem and arson causing great bodily injury, but convicted her of the lesser offense of simple mayhem. The jury also found appellant used a deadly and dangerous weapon to commit the offense.

Following appellant's conviction, the Office of Diversion and Reentry (ODR) filed an affidavit recommending that appellant be placed in its intensive case management services program. The trial court found appellant might be suitable for placement in the ODR housing program, and transferred the matter to Department 44/644, the ODR court, for a determination of her suitability.

The ODR court held a hearing on December 2, 2020. The prosecutor contended that although appellant had been found eligible for ODR, she was not suitable for it due to the nature of her offense, particularly the very serious injuries suffered by Estrada. A probation department officer was present at the hearing and stated the probation department was strongly opposed to appellant entering ODR. He emphasized appellant was "a documented member of the Family Blood Swan Street

4

Gang. They are a very vicious street gang known for very serious retribution."

The ODR court also heard from an ODR representative, who stated that appellant "is our target population. She's diagnosed as bipolar disorder. She's now, like her attorney mentioned, on two injections which she has not been in the past. [¶] In addition to oral mood stabilizers, [appellant] said this medication regimen is really working for her and nothing that she has been on in the past has worked as well. [¶] She does have significant treatment in the community. So I do think that she recognizes this opportunity and does present as motivated this time around."

The ODR court found appellant was "marginally suitable for O.D.R." When the court asked if arraignment for judgment and time for sentencing was waived, the prosecutor replied: "So no—the victim has a right to be heard in this case pursuant to Marsy's Law." The prosecutor added "we are depriving the victim of the opportunity to be heard." The prosecutor explained that she was unfamiliar with ODR and believed that a final determination on ODR would not be made until the sentencing hearing scheduled for next week. The court agreed to set the matter for further ODR, and stated: "My tentative is yes, but I will be open to hearing of course from everyone."

At the continued hearing on ODR on January 6, 2021, the victim and his mother were present. The prosecutor read statements the victim and his mother and sister had prepared for the court. The victim provided additional photos of his injured leg. The victim and his family all opposed ODR and sought prison time.

The court had previously asked the prosecutor to consult with someone else in her office, apparently the head deputy district attorney, Mr. Wright. The prosecutor stated Wright told her to provide the ODR court with transcripts of appellant's jail calls showing "she was still trying to bypass justice and not showing remorse for her decision." Wright asked the prosecutor to convey his belief that appellant was unsuitable for ODR.

When appellant's counsel argued, she stated that "in discussing Mr. Wright's position on O.D.R. for [appellant], the People indicated something about how she hasn't—still exhibited negative behavior despite being on the injections." Counsel then discussed the Sheriff's Department's objection to appellant being out of a safety chair for the March 2020 trial and renewed this objection in September 2020 when deliberations finally got underway and a verdict was reached. Counsel pointed out the Sheriff's Department did not have any additional information or evidence of any incidents that occurred during the March trial and September deliberations.

The court stated: "This is probably one of the most serious cases I have seen since coming to O.D.R." The court explained: "There are cases where the offense is just so serious that I cannot in good conscience take that case. I think this is one of those cases." The court noted that the head deputy district attorney "has really good judgment and can often bring in a D.A. who is in opposition to understanding the value of the program and medication" and he was opposed to ODR. Probation was very opposed, and mentioned "the gang narcotic piece being of concern." The court concluded: "In looking at the phone calls from March 4th [*sic*], these are of great concern to the court. So I will find that she is not a suitable candidate for O.D.R. I will

6

return her to the home court for sentencing." The court added: "I should say one other issue just for the record is that there have been difficulties with [appellant] on occasions that she has come to court where she has presented a problem to the deputies . . . and that is another indication to me that she is not going to be a good fit for our program."

## DISCUSSION

I.  *Diversion*

Appellant contends the court abused its discretion in denying her placement in ODR diversion. She contends the court's tentative ruling on December 2, 2020 that she was suitable for diversion was correct and the court's change of heart was not warranted by the additional information which the court received at the January 6, 2021 hearing.

To the extent appellant is contending that the trial court lacked the authority to change its initial decision, she has forfeited that claim. She has cited no legal authority to support such a restriction, and has also failed to provide a logical explanation for why the court should not be able to change its initial decision after the prosecutor explained that the victim and his family wished to be heard, but were not present due to a misunderstanding by the prosecutor. (See, e.g., *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) At that point, the court set the matter for a further/continued hearing and expressly indicated that its "tentative is yes" for ODR, but the court was open to further information. We note that appellant's trial counsel did not object to further proceedings.

Turning to the merits of the decision, the parties acknowledge that placement in an ODR program involves a grant of probation, and must be evaluated under the abuse of discretion

7

standard of review applicable to the grant or denial of probation. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 [probation decision].) " 'A court abuses its discretion "whenever the court exceeds the bounds of reason, all of the circumstances being considered." [Citation.] We will not interfere with the trial court's exercise of discretion "when it has considered all facts bearing on the offense and the defendant to be sentenced." ' [Citation.] ' "[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation." ' " (*People v. Kingston* (2019) 41 Cal.App.5th 272, 278.) "[A] ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

The trial court did not act arbitrarily or irrationally in denying diversion in light of the additional information presented at the January 6, 2021 hearing. The court received additional evidence concerning the severity of Estrada's injuries, the extent of the medical interventions required to treat the injuries, and how those injuries would limit his activities for the rest of his life; the court also learned of the toll it took on his family to care for him during treatment and recovery.

Appellant contends the trial court was aware of the extent of Estrada's injuries at the first hearing when it initially found her suitable for diversion, and implies that no new information was provided on this topic at the continued hearing. The court explained that at the first hearing, "I had a verbal representation about the seriousness of the injuries. I did not have a visual. [Now] I have a visual. It is pretty extreme." The court also received additional information from the victim's family at the

January hearing about the extensive care he needed at home once he was discharged from the hospital, which further illuminated the seriousness of the injuries.

Appellant contends the seriousness of Estrada's injuries did not change her intent or conduct, so the ODR placement would have fulfilled the same sentencing objectives regardless of the extent of Estrada's injuries. Appellant's intent, conduct, or mental health are not the only factors to be considered by the court in deciding on a sentence for a defendant, including whether a defendant is suitable for ODR.

Rule 4.414 of the California Rules of Court sets forth the factors a court should consider in granting or denying probation. These factors include the nature and seriousness and circumstances of the crime, and whether the defendant inflicted physical or emotional injury. (Cal. Rules of Court, rules 4.414(a)(1), 4.414(a)(4).) Further, the court may consider whether the defendant's acts involved a high degree of cruelty, viciousness, or callousness. (Cal. Rules of Court, rules, 4.408(a), 4.421(a)(1).) The court properly considered this factor.

Appellant also contends the court should not have considered her March 5, 2020 phone call discussing witness intimidation because she had "significantly progressed in rehabilitating herself" by the time of the January, 2021 ODR hearing. The record citations she provides to support her claim of rehabilitation show she was compliant with her medications. She similarly contends the trial court should not have considered alleged problems she had with deputies because those did not occur during her current incarceration, showing rehabilitation.

9

The court specifically inquired into the timing of the phone call in relation to the commencement of appellant's medication, and learned that her first medication injection was in September 2019 and her second was in November 2019. Thus, the phone call occurred after she had been on her medications for months.

The prosecutor did not rely on appellant's problems with deputies in arguing for the denial of ODR, and the court mentioned the problems only after denying ODR. We find it is not entirely clear when appellant's difficulties with courthouse deputies began, but the trial court was concerned enough about her behavior in early March 2020 to hold a hearing on restraints in the courtroom and to order her to wear a stealth belt. At the hearing, the head sergeant of the courthouse lockup testified about appellant's behavioral problems in the lockup, but it is not entirely clear how recent those problems were.[2] At the conclusion of the March 2020 hearing, the trial court noted it "saw her ramping up emotionally" during the hearing and determined she needed to wear a stealth belt during trial. Thus, there is some indication in the record that problems persisted at least until the beginning of trial, and so any minimal consideration of those problems by the ODR court was not improper.

---

[2] The lockup sergeant referred to "past" problems, but it is not clear how far in the past those problems were. Appellant had been in custody since at least September 2019.

II.    *New Law*

Section 1170, subdivision (b)(1) provides that the mid-term sentence is the presumptive term of imprisonment.  Assembly Bill 124 amended section 1170, subdivision (b) to provide: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense. [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense. [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." (§ 1170, subd. (b)(6).)

The parties agree the changes made by Assembly Bill 124, effective January 1, 2022, apply retroactively to appellant because it is ameliorative and her case is not yet final.  We agree as well.

There is ample evidence in the record, in the form of a report by a psychiatric social worker, that appellant suffered "psychological, physical, or childhood trauma."  The report also indicates appellant started sex work to make money and was thereafter exploited by her pimp.  Respondent contends that because the court was aware of these factors, there is no need to remand for resentencing.  We cannot agree.

11

The trial court stated: "[L]ooking at all the factors, mitigating, aggravating factors that were set forth in counsel's memorandum, also looking at the nature of [the] violence that was undertaken in this situation, the court feels that balancing those . . . that the appropriate term" is the mid-term of four years. At the time of sentencing, section 1170, subdivisions (b)(1) and (b)(2) provided that the mid-term was the appropriate term unless the circumstances in aggravation outweighed the circumstances in mitigation. Thus, by imposing the mid-term, the trial court at least impliedly found the aggravating factors did not outweigh the mitigating factors; the court arguably made an express finding by its reference to balancing. Under amended subdivision (b)(6), if the aggravating factors do not outweigh the mitigating factors, the low term is the presumptive term. Appellant is entitled to a resentencing hearing for the trial court to determine whether her trauma and the fact that she was trafficked were "a contributing factor in the commission of the offense."

## DISPOSITION

Appellant's sentence for mayhem is vacated, and the matter is remanded with directions to the trial court to hold a new sentencing hearing to consider whether section 1170, subdivision (b)(6) requires the imposition of the low term. The judgement is affirmed in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:



GRIMES, J.



WILEY, J.

13